133 So.2d 115 (1961)
FLORIDA STATE TURNPIKE AUTHORITY, an agency of the State of Florida, Appellant,
v.
INDUSTRIAL CONSTRUCTION COMPANY, Appellee.
No. 2475.
District Court of Appeal of Florida. Second District.
September 27, 1961.
*116 Gilbert A. Smith, Tampa, for appellant.
Saunders, Curtis, Ginestra & Gore, Fort Lauderdale, for appellee.
KANNER, Judge.
Florida State Turnpike Authority, defendant below, appeals from adverse final decree entered by the chancellor in a declaratory action. By the decree, defendant was ordered to pay to plaintiff contractor certain sums for work performed by plaintiff, determined by the chancellor to have been outside the scope of plaintiff's contractual responsibility.
Plaintiff, having been awarded three contracts to build bridges for defendant upon the Sunshine State Parkway, duly performed its contractual obligations as to the major aspects of the work undertaken. During construction however, defendant through its engineer notified plaintiff that certain concrete piers exposed to public view would have to be given a "Class 2" finish. Plaintiff, agreeing, notified defendant that it would claim extra compensation, since the work had not been contemplated in the bidding and, under plaintiff's interpretation, was not within the purview of the contracts. The work was completed satisfactorily, but the authority denied plaintiff's claim for additional compensation
Defendant, by its appeal points, urges that a general release executed by plaintiff as to the contract designated 2.3 bars recovery of extra payment relative to that contract and also that, notwithstanding this, the work was covered by the specifications and incorporated into all of the contracts, if not directly, then under custom and usage. At this juncture it may be interpolated that there is no evidentiary basis upon which could be premised the custom and usage rule contended for by defendant.
At a meeting of the authority with representatives of plaintiff present, the parties agreed that court action rather than arbitration would be the better method of settling the dispute. In order that payment upon the bulk of the work accomplished would not be held up, general counsel for defendant, upon inquiry by plaintiff, indicated that plaintiff could sign final releases and receive payment, if the signing was accompanied by a reservation in the matter of the pier finishing. This was incorporated *117 by defendant's secretary into the minutes of the meeting. Subsequently, a letter from the chief engineer of the authority to plaintiff set out that, if plaintiff would execute valid releases as to the three bridge contracts, defendant would make payment of the final amounts due, with the understanding that any claim for Class 2 finishing would not be covered under the releases. The releases were duly executed, and payment upon the contracts was made to plaintiff. Although the release here concerned as to contract 2.3 contains no reference to the claim for extra compensation, it does not operate as a discharge because of the specific understanding that a declaratory action would be brought.
Plaintiff's claim to additional compensation for the Class 2 finish placed upon the pier surfaces was thereupon made the subject of this declaratory action. The parties entered into a stipulation of facts, issues, and contentions which, among other things, contained this agreement:
"The Plaintiff and the Defendant agree that the liability of the Defendant, Florida State Turnpike Authority, if any, rests on an interpretation of the excerpts of the sections of the Specifications contained in Plaintiff's Exhibit B attached to the Complaint; that the Plans and the Contracts and the Work Orders or Changes contain nothing with reference to the requirement of a Class 2 Surface Finish to the areas described herein."
Amount of damages in the event the court found for plaintiff was also stipulated, and the applicable portions of Exhibit B had been attached to the complaint.
Under the pertinent section of the specifications entitled "Finishing Concrete," nothing is set out in paragraphs (a), (b), and (c) designating particular surfaces to be treated under the procedures described in those paragraphs. However, paragraph (d), entitled "Surfaces Requiring Surface Finish," specifies three categories of surfaces which require a Class 1 finish. The paragraph then expressly provides that "any other surfaces requiring surface finish shall be shown or listed on the plans."
The contracts appear to be a standard form adopted for use by the turnpike authority. The specifications apparently are designed so as to be usable by reference without revision in various construction contracts of defendant. It must be recognized that the stipulation entered into between the parties states clearly that the plans contain nothing with reference to the requirement of a Class 2 surface finish for the areas here involved.
The contractual instruments were those of defendant's choosing. In construction of a contract, a reasonable interpretation consonant with the intent of the parties at the time of its execution should be given, if that intention can be ascertained from the language of the contract. In arriving at such an interpretation, it will be the aim of a court to give a just and fair construction or one which will effectuate justice between the parties. One fundamental general rule utilized by courts is that doubtful or ambiguous language of a contract is to be construed against the party who drew it or chose the language used. 7 Fla.Jur., Contracts, section 84, p. 150, section 85, p. 151, and section 87, p. 152.
At the time the contracts were executed, defendant authority could have included within them any requirements which it might have deemed advisable or desirable. It must now abide by the language which it did employ. Under a fair, just, and reasonable construction of the contracts as to the points at issue, we must conclude that the chancellor properly entered declaratory decree in plaintiff's favor.
Affirmed.
ALLEN, Acting C.J., and WHITE, J., concur.