176 So.2d 362 (1965)
ALLEGHENY MUTUAL CASUALTY COMPANY, Appellant,
v.
STATE of Florida, Appellee.
No. 4284.
District Court of Appeal of Florida. Second District.
June 1, 1965.
Rehearing Denied July 2, 1965.
*363 John J. Duffy, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
KANNER, Judge (Ret.)
The journey to this court through the avenue of appeal is made because of judgments of forfeiture of two appearance criminal bail bonds. The judgments are against the principal of the bond, Horace Sheppard Zane, and the surety, Allegheny Mutual Casualty Company. By the notice of appeal, "ALLEGHENY MUTUAL CASUALTY COMPANY and WILLIAM G. BRYAN, attorney-in-fact" for that company, entered the appeal. Therefore, since no judgment was entered against the attorney-in-fact and since the principal is not designated as an appealing party, the only one actually appealing is the surety company.
Two appeal questions are presented. The effect of the first is that the court, in the exercise of the judicial discretion with which it is vested, should have set aside the judgments of forfeiture after the defendant was returned to custody. The bonds were twice estreated for failure of the defendant to appear. After the first non-appearance, the estreatments that had been entered were vacated; then for the second time the defendant failed to appear on the date set, with the result that the bonds were again estreated. The return of the defendant to custody was effectuated through his apprehension by Pinellas County, at a considerable cost to it. There is no contention that any error was committed as to the procedural aspects that culminated in the entry of the judgments of forfeiture. We find that there has been no abuse of judicial discretion.
The remaining question, the one stressed by appellant, poses the proposition that the lower court erred in refusing to limit the liability of the surety to one thousand dollars on each bond. Considering this, we note that the appearance bonds consist of *364 standard forms containing chiefly printed matter with blank spaces for the filling in of appropriate data. They were executed under date of September 10, 1962. At two places in each appearance bond, there is the handwritten insertion of $5,000 as the amount of the obligation.
Attached to each bond is a power of attorney, these being identical in content and format; and the date of execution, October 2, 1961, is the same in each. Along the left hand margin or border of the form of the power of attorney, running from bottom to top of the page but not within the body of its context in the sense of parallel continuity is the printed sentence, "THIS CERTIFICATE IS NOT VALID FOR MORE THAN ONE THOUSAND ($1,000.00) DOLLARS." In the body of the document it is stated that a resolution had been legally adopted previously and was in full force and effect. The quoted resolution empowered certain named officers of the surety "to execute on behalf of ALLEGHENY MUTUAL CASUALTY COMPANY Criminal bail bonds in a principal sum not to exceed fifty thousand ($50,000.00) dollars on any one bond, and further that any one of the aforesaid officers of ALLEGHENY MUTUAL CASUALTY COMPANY is hereby authorized to affix the corporate seal of the said Company to Powers of Attorney executed pursuant hereto." Thus, it appears that any one of the designated officers was empowered to execute, on behalf of the surety, powers of attorney authorizing and qualifying the attorney-in-fact named therein to execute on the company's behalf criminal bail bonds in the principal sum not to exceed $50,000 on any one bond. The power of attorney before us in each instance was executed by a certain officer who was named under the resolution, and each document stated that the bail bond was to be not more than "TWENTY-FIVE THOUSAND ($25,000.00)", this sum having been supplied by typing in the blank space provided for the sum to be named.
The petition to vacate the judgments states that the attorney-in-fact prepared the two appearance bonds in the amount of $5,000 each but that these bonds were not issued nor any power of attorney attached to either, it being his understanding an attempt was being made to have them reduced to $1,000 each, that subsequent to preparation of the bonds for the face amount of $5,000, he understood they were reduced to $1,000 and therefore executed and attached a power of attorney in the amount of $1,000 each and issued the bonds, although the face of the bonds had not been reduced to $1,000. It is added that the cost incurred by Pinellas County in apprehending and returning the defendant amounted to a total of $1,055.99. The objective sought through the petition was to have the judgments nullified upon payment of the costs incurred by the county in apprehending and returning the defendant and, in the alternative, to have the judgments vacated upon payment of $2,000 to the county, this being asserted as the maximum obligation of the surety by virtue of the power of attorney attached to each bond.
After a hearing on the petition at which the surety and the State were represented, the court entered its order denying the petition. The record is completely silent as to what transpired there; it contains no testimony; and the only evidence is that of each appearance bond with its power of attorney. Otherwise, there are only the procedural papers, including orders, estreatures, and the judgments of forfeiture. There is no proof whatever nor anything to support the statement contained in the petition that the bonds had been reduced to $1,000. Also, as has been indicated, it was necessary for the county to apprehend the defendant; and we find no basis for discharge of the judgments upon payment of the mentioned costs.
The matter, therefore, resolves itself into a construction of the appearance bonds with the power of attorney appended to each. *365 By the position of the surety company, because of the printed wording on the margin of the power of attorney, the maximum sum of liability is that of $1,000, while the contrary position is that the prevailing language is the typewritten sum of $25,000 in the body of the power of attorney which sets the limit and the $5,000 handwritten into the bonds which specifies the amount of the instant obligation on each bond. We agree with the latter. At this juncture, we may recall that the resolution referred to in the power of attorney spelled out that an attorney-in-fact could issue criminal bail bonds not to exceed $50,000 when so empowered by one of the officers named in the resolution. In this power of attorney, by the typewritten sum particularized, the amount was not to exceed $25,000. There is no attempt to show that the authority mentioned above was not conferred upon this attorney-in-fact; nor is it represented that the premium paid was for a $1,000 bond and not for a $5,000 bond.
It is rudimentary that in the construction of a contract the court will look to the whole instrument and not to particular provisions in order to ascertain the intention of the parties to it. Well-rooted, too, is the principle that, where language of a contract renders doubtful its meaning, such language should be construed against the party who drew the instrument or chose the wording. Florida State Turnpike Authority v. Industrial Construction Company, Fla.App. 1961, 133 So.2d 115. The contractual documents here were drafted or chosen by the company.
Aside from the general principles of construction just referred to, there is the rule, applicable and directly controlling here, that where part of a contract is written or typed and part is printed, and the written or typed and the printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the total instrument, the words in writing or typing will control. The reason for the according of greater effect to the written or typed part as against the printed portion if they are inconsistent is that the written or typed words are the immediate language and terms selected by the parties themselves to express their meaning, while the printed form is intended for general use without reference to particular objects and aims. A court will, however, resort to this rule only from necessity when the written or typed words or clauses and the printed words or clauses cannot be reconciled; otherwise the duty of the courts to give effect to all the terms and language of the agreement is imperative. 17 Am.Jur.2d, Contracts, section 271, Relation and inconsistencies between written, typewritten, and printed matter, page 679. See also 17A, C.J.S. Contracts § 310, pages 168, 169, 170; Nat Harrison Associates, Inc. v. Florida Power & Light Company, Fla.App. 1964, 162 So.2d 298. It is indisputably clear that the printed words of limitation on the side margin of the power of attorney are inconsistent with and repugnant to the typewritten sum specified in the body of it, as well as with the handwritten sum of the obligation stated in the bonds.
Under what we have said, it follows that there was no error nor abuse of discretion on the part of the court in declining to set aside the judgments of forfeiture, no error in its refusal to nullify the judgments upon payment of the costs incurred in the apprehension and return of the defendant, and no error in its declination to limit the liability to $1,000 on each bond.
Affirmed.
SMITH, C.J., and SHANNON, J., concur.