347 So.2d 1081 (1977)
Alexander C. MacINTYRE, a/k/a A.C. MacIntyre, Appellant,
v.
GREEN'S POOL SERVICE, INC., and Lemuel Ramos, A.I.A. Associates, Appellees.
No. 76-1092.
District Court of Appeal of Florida, Third District.
July 6, 1977.
*1082 Adams, George, Lee & Schulte and Amy Shield Levine, Miami, for appellant.
Smith, Mandler, Smith, Parker & Werner and Jeffrey Sarrow, Miami Beach, for appellees.
Before HENDRY, C.J., and PEARSON and HUBBART, JJ.
PEARSON, Judge.
The appellant Alexander C. MacIntyre, the owner of a remodeled residence, was the defendant to a mechanic's lien foreclosure brought by Green's Pool Service, Inc. MacIntyre answered the complaint and filed a third party complaint against Lemuel Ramos, A.I.A./Associates, his architect on the job, alleging negligence of the architect. Ramos counterclaimed against the owner MacIntyre alleging a balance due on his contract fee. After trial, a final judgment was entered upon the third party complaint and the counterclaim. The trial court found for the architect upon the claim of negligence and for the architect upon his claim for a balance due on his fee. This appeal by MacIntyre urges reversal of (1) the denial of his complaint against the architect for negligence, and (2) the judgment for the architect. Green's Pool Service, Inc., the lienor, is not a party to this appeal.
The owner's contention is basically that the trial court misapplied the law in failing to find negligence upon the undisputed facts presented and that the trial judge misconstrued the contract between the parties.
MacIntyre was the owner of a house located at 1835 South Bayshore Drive, which warranted improvement. To this end, MacIntyre contracted with Ramos on November 8, 1971, to act as architect on behalf of MacIntyre in the construction or remodeling of said house. The contract entered into between Ramos and MacIntyre was the standard form A.I.A. agreement between owner and architect, with modifications. The standard portion of the contract provided that the architect would receive payment of the basic compensation by a percentage of the total construction cost and, in addition, an hourly rate of pay for additional services. The contract was modified to provide that the architect would receive full payment of the basic compensation at the completion of the bidding or negotiation phase and, thereafter, to be paid an hourly rate for work actually performed by Ramos or his employees during the construction phase of the house.
On June 16, 1972, MacIntyre executed an agreement with the general contractor, Griggs, to remodel the house for a bid of $100,000.00. At the completion of the bid and negotiation phase, Ramos was paid in *1083 full in accordance with the modified contract, the agreed upon 16% of $100,000.00. After that payment, Ramos charged MacIntyre on an hourly basis for work performed by the architect or his employees as was previously agreed upon by the parties.
As a result of the impending marriage of MacIntyre, changes were made in the construction or remodeling of the house for an additional cost of $29,858.00. This additional work was reflected in a change order executed in May, 1976. After the change order was made Ramos continued to bill MacIntyre at an hourly rate through June 29, 1973. No further bill was sent to MacIntyre by Ramos prior to the counterclaim filed by Ramos on December 12, 1976, with its demand for 16% of $29,858.00.
On May 29, 1973, Griggs abandoned the construction job on MacIntyre's house. MacIntyre was also faced with a barrage of lawsuits from subcontractors who had filed complaints for foreclosure of mechanic's liens and damages against MacIntyre because they had not been paid by Griggs, the general contractor. As previously pointed out, MacIntyre filed a third party complaint and later a counterclaim against Ramos for negligence in advising the selection of Larry C. Griggs, Inc., as the general contractor for the project, negligence in advising MacIntyre as to when and to whom progress payments were to be made, and negligence in failing to file and cause to be recorded a Notice of Commencement with a Clerk of the Circuit Court or, in the alternative, to advise MacIntyre to file and record a Notice of Commencement with a Clerk of the Circuit Court.
Appellant owner's point urging error upon the court's finding that the owner had failed to establish his counterclaim for negligence of the architect is not supported by the record. The contract places upon the architect none of the duties alleged. The mechanic's lien statute places the burden of recording and posting a "Notice of Commencement" upon the "owner or his authorized agent." See Section 713.13(1), Florida Statutes (1971). The other allegations of the counterclaim are unsupported by the record because there is no showing that the duties alleged fall within the duties ordinarily assumed or placed upon an architect by custom and practice of the business community. Therefore, the judgment finding for the architect upon the counterclaim will be affirmed.
Appellant/owner's point, urging that the trial court misinterpreted the contract between the owner and the architect so that the architect was entitled to recover an additional fee upon the $29,858.00 additional construction costs has merit. The standard form A.I.A. contract was modified by the architect and as modified became the contract between the owner and the architect. The standard form provided as basic architect's compensation a fee of 16% of "construction cost."[1] The standard contract also provided for payments at an hourly rate to the architect "For the architect's additional services." There is no dispute on the additional services payments. They have been paid in full as billed by the architect. The dispute arises from an attempted application by the architect of the 16% fee due to increased construction costs because of changes and the contractor's abandonment of the job.
If the court had been dealing with the standard form without the modification made by the architect and approved by the owner, the architect's interpretation adopted by the trial court would have been correct, because the contract would have called for two separate payments, one based upon "construction costs" and the other based upon "additional services." The difficulty arises because of the modification. The standard contract would have called for payment of the 16% as follows:

*1084
 * * * * * *
 "Schematic Design Phase .................................. 15%
 Design Development Phase ................................. 35%
 Construction Documents Phase ............................. 75%
 Bidding or Negotiation Phase ............................. 80%
 Construction Phase ...................................... 100%
 * * * * * *

This system of payment was changed by the modification as follows:

 "15.3 Payment schedule shown in Article 6.1.2 shall be revised
 to read as follows:
 Schematic Design Phase ................................... 20%
 Design Development Phase ................................. 50%
 Construction Documents Phase ............................. 90%
 Bidding or Negotiation Phase ............................ 100%
 15.4 The fee shall be computed on the basis of probable
 construction cost and shall be redefined at the time that bids
 are open, at which time the fee and payments shall be adjusted.
 15.5 At no time shall payments be made in excess of schedule of
 percentages under Article 15.3."

The modification terminates the 16% fee at the "Bidding or Negotiation Phase." In effect, it changed the terms of the contract from one to pay 16% of "construction costs" to 16% of "probable construction costs." It allowed the architect to get his money sooner but on a different basis. Therefore, there is no further payment due under the "basic compensation" provision of the contract.
It is elementary law that a contract will be construed according to its own clear and unambiguous terms. Arnold v. First Savings and Trust Co., 104 Fla. 545, 141 So. 608 (1932); Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla. 1954); and Shaw v. Bankers Life Company, 213 So.2d 514 (Fla.3d DCA 1968). It should be noted that the terms of the contract were followed by the parties in their dealing and that no claim or bill for 16% of additional construction cost was made until the filing of the counterclaim by the architect. The circumstances suggest that the parties interpreted the contract to call for only one payment of the 16% fee. Cf. American Agronomics Corporation v. Ross, 309 So.2d 582 (Fla.3d DCA 1975).
If the contract should be read as ambiguous, two additional principles for the interpretation of contracts support the conclusion we have reached. In cases of doubt as to the meaning the parties intended by contract language, the language will ordinarily be interpreted in a light less favorable to the party drawing the contract. See Travelers Indemnity Co. v. Washington Federal Savings and Loan Association of Miami Beach, 214 So.2d 492 (Fla.3d DCA 1968); and American Agronomics Corporation v. Ross, 309 So.2d 582 (Fla.3d DCA 1975). Where there is a conflict in the language of a contract between the printed portions thereof and the specially added portions thereof, the specially prepared portions will ordinarily be given precedence. See Nat Harrison Associates, Inc. v. Florida Power & Light Company, 162 So.2d 298 (Fla.3d DCA 1964); and Allegheny Mutual Casualty Company v. State, 176 So.2d 362 (Fla.2d DCA 1965). See also Burdines v. Pan-Atlantic Steamship Corp., 199 F.2d 571 (5th Cir.1952).
The appellee/architect urges that the question of whether the 16% provision covered increased construction costs after the 100% payment was a question of fact to be found by the court and, therefore, not to be disturbed by the appellate court except upon a holding that no competent evidence supported the finding of the trial judge. See Seven-Up Bottling Co. of Miami, Inc. v. George Construction Corp., 156 So.2d 167 (Fla.3d DCA 1963). We think that the cited principle is not applicable here because the contract itself is governing, unlike the Seven-Up case where the disputed element was missing from the contract.
We hold that the trial court misinterpreted the contract between the parties in finding that additional sums were due from the owner to the architect, and that portion of the judgment which grants recovery in favor of Lemuel Ramos, A.I.A./Associates, against Alexander C. MacIntyre is reversed. The judgment is affirmed in part and reversed in part and remanded with directions to enter a judgment for Alexander C. MacIntyre upon the counterclaim of Lemuel Ramos A.I.A./Associates.
Affirmed in part and reversed in part.
NOTES
[1] "a. FOR THE ARCHITECT'S BASIC SERVICES, as described in Paragraph 1.1, Basic Compensation computed at the following percentages of the Construction Cost, as defined in Article 3, for portions of the Project to be awarded under

A single Stipulated Sum Contract per cent (16%)"