357 So.2d 1066 (1978)
RALSTON, INC., William R. Ralston and Alfred J. Anton, Appellants,
v.
Elliot L. MILLER, Appellee.
No. 77-764.
District Court of Appeal of Florida, Third District.
April 25, 1978.
*1067 Alfred J. Anton, Miami, for appellants.
Elliot L. Miller, Miami, for appellee.
Before PEARSON and HUBBART, JJ., and CRAWFORD, GRADY L. (Ret.), Associate Judge.
CRAWFORD, GRADY L. (Ret.), Associate Judge.
Appellants appeal from a judgment of the trial court, dated July 13, 1976, dismissing their counterclaim, and a judgment dated March 29, 1977 in favor of the appellee on the complaint. The appellee first urges that this court has no jurisdiction to entertain the appeal on the judgment dated July 13, 1974, on the ground that the notice of appeal was filed late.
The Supreme Court of Florida has stated that:
"Piecemeal appeals will not be permitted where claims are inter related and involve the same transaction and the same parties remain in the suit... .
Generally, the test employed by the appellate court to determine finality of an order, judgment or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected." (S.L.T. Warehouse Company v. Webb, 304 So.2d 97, 99).
The rule of inter-relationship of the parties and of the claims is clearly applicable in this cause. The complaint and the countercomplaint are grounded on the lease between the parties and the alleged breaches thereof. The trial court's judgment, dismissing the appellant's counterclaim, did not constitute an end to the judicial labor between the same parties relating to the lease and issues of liabilities under provisions of the lease which were in conflict. The trial court heard continuing testimony and arguments from both sides until entry of the last judgment dated March 29, 1977.
This cause originated when the appellee, plaintiff below, filed an amended complaint as the owner of the Opa Locka Hotel, claiming rent due, attorneys' fees, an accounting, *1068 balance due on a promissory note, and damages. The appellants, defendants below, filed an amended compulsory counterclaim, alleging that the appellee, as lessor, had violated a specially written provision in the lease, namely paragraph 23, which provided:
"TWENTY THIRD  The lessor shall be responsible for maintaining the roof, exterior of the premises, and for maintaining the structure in good repair and condition. The parties acknowledge that the building in which the leased premises is located is old and the requirement for maintenance of walls, ceilings and roof can reasonably be expected, which repairs shall be made by the lessor at the lessor's expense. In the event lessor fails to make the repairs within a reasonable time after written notice, the lessees may cause repairs to be made and may deduct the costs thereof from the next ensuing rental payments."
The appellants alleged that the appellee failed to maintain the roof and exterior of the premises and failed to maintain the structure in good repair and condition; that the building and the leased premises were permitted to fall into such a state of disrepair that the City of Opa Locka declared the building unsafe and ordered the tenants to remove themselves; that the appellants were evicted by the City by reason of the failure of the appellee to maintain the structure. Damages were claimed for loss of value of improvements, loss of profits, loss of leasehold rights, and other damages resulting from the breach. The appellee asserted that he, as lessor, was absolved and exculpated from any liability from water damage, albeit resulting from defective roof and collapsing dome by reason of standard printed provisions of the lease, namely, the Second and Thirteenth, which provided:
"SECOND  All personal property placed or moved in the premises above described shall be at the risk of the lessee or owner thereof, and lessor shall not be liable for any damage to said personal property, or to the lessee arising from the bursting or leaking of water pipes, or from any act of negligence of any co-tenant or occupants of the building or of any other person whomsoever.
THIRTEENTH  It is expressly agreed and understood by and between the parties to this agreement, that the landlord shall not be liable for any damage or injury by water, which may be sustained by the said tenant or other person or for any other damage or injury resulting from the carelessness, negligence, or improper conduct on the part of any other tenant or agents, or employees, or by reason of the breakage, leakage or obstruction of the water, sewer or soil pipes, or other leakage in or about the said building."
During the course of the trial, the court observed that the pivotal question was the legal interpretation of paragraph 23 of the lease placing the burden on the lessor/appellee to maintain the roof and the building in good repair as it conflicted with paragraphs 2 and 13 thereof, purportedly absolving the landlord from liability. The Court, observing that it was a situation not unlike a summary judgment question, received the oral stipulation as to the pivotal facts, and thereafter, entered a judgment dated July 13, 1976, dismissing the appellants' counterclaim.
On subsequent trial of the appellants' complaint, the court entered judgment dated March 29, 1977 against the appellants, for:
Rent for April, May, June and July, 1975, Rent from July 25, 1975 through February, 1976, when the writ of possession was served;
Attorneys' fees for action involving breach of the lease and the promissory note;
Judgment for $100.00 against the defendant, Ralston, for rents collected; and
Personalty removed from the premises by appellants after eviction and declaration of condemnation by the City of Opa Locka.
Subsequently, by leave of court, the parties filed affidavits and depositions in order to supplement the record for appeal.
*1069 When confronted with the facts of this case, and the provisions of paragraphs 2, 13, and 23 of the lease, the lower court found that there was no conflict between these paragraphs, and, in effect, found that there was no obligation or duty on the landlord under paragraph 23, by reason of the fact that the damage sustained from the breaches of paragraph 23 resulted in water flowing into the premises, and that paragraphs 2 and 13 absolved the lessor from any claim for water damage.
Paragraph 23 of the lease, especially written and inserted in the lease by the parties, is clear and unambiguous.
The lessor is required to maintain the roof and exterior of the premises and the structure in good repair and condition. It is uncontroverted that the lessor failed to comply with these obligations. For a period of six (6) months, the lessor permitted the dome to deteriorate after the first sinking and cracking of the dome had occurred. The lessor did not shore up the dome; did not cover the cracks from top to bottom of the large areas at the bottom of the dome which had crumbled; did nothing to provide cover on the roof where the dome had fallen through; and did nothing to restore the parapets where the landlord had caused holes to be made. The first fissures in the dome permitting water to pour through occurred in January, 1975. The sinking of the dome, the leakage of rainwater into the premises, and all of the resulting damages from the leakage caused Dade County authorities to declare the upstairs portion (over which Dade County had jurisdiction) to be declared unsafe for human habitation. For the succeeding five (5) months, the landlord did nothing with regard to the condition and the continuing deterioration resulting in larger and increased orifices in the dome and roof through which rainwater continued to come into the building and into the leased premises in question, until July, 1975, when the City of Opa Locka declared the leased premises in question to be unsafe for human habitation and, by emergency order, locked out the appellants.
The rule in Florida is that any disturbance of the possession of a tenant by the landlord that renders the premises unfit for occupancy, for the purposes for which they were demised or that deprives the tenant of the beneficial enjoyment of the premises, amounts to a constructive eviction. (20 Fla.Jur. 322). A constructive eviction has the effect of essentially depriving the tenant of the beneficial enjoyment of the leased premises as where they are rendered unsafe, unfit, or unsuitable for occupancy in whole or in substantial part for the purposes for which leased. Hankins v. Smith, 103 Fla. 892, 138 So. 494.
The obvious contradictions between paragraph 23 on one hand, and paragraphs 2 and 13 on the other hand, are manifest. In respect to this type of contradiction, the law is well settled. In Allegheny Mutual Casualty Co. v. State, 176 So.2d 362, Fla. App., the court held:
"There is the rule, applicable and directly controlling here, that where a part of a contract is written or typed and part is printed, and the written or typed and the printed part are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the total instrument, the words in writing or typing will control. The reason for the according of greater effect to the written or typed part as against the printed portion if they are inconsistent, is that the written or typed words are the immediate language and terms selected by the parties themselves to express their meaning, while the printed form is intended for general use without reference to particular objects and aims."
In Nat Harrison Associates, Inc. v. Florida Power & Light, 162 So.2d 298, Fla.App., construction of an agreement with a typewritten portion and a stamped portion, the Court said:
"This portion was typewritten, whereas the former was printed or made with a rubber stamp, which was obviously prepared for general use and not specifically for the purchase order in question. Therefore, the typewritten paragraph should control over the printed matter."
*1070 The court continued in the judgment, dismissing the counterclaim, to find that in the event of the lessor's failure to make the repairs required under paragraph 23, the appellants "shall make such repairs and charge same to the lessor by deduction from future rent." The court then concluded that in the event of the failure by the lessor to make the required repairs, the lessee's remedy was to make the repairs itself.
Paragraph 23 provided in part:
"In the event lessor fails to make the repairs within a reasonable time after written notice the lessees may cause repairs to be made and may deduct the cost thereof from the next ensuing rental payments." (emphasis added).
The word "may", when given its ordinary meaning, denotes a permissive term rather than the mandatory connotation of the word "shall" 30 Fla.Jur. Supplement, Statute, Section 8. There is no law which supports the lower court's finding that the lessee was obligated to make the repairs in the absence of the lessor's so doing.
After entering a judgment, dismissing the counterclaim of the appellants for damages, for failure to maintain the premises and for constructive and actual eviction, the court then entered a judgment against the appellants for rent for the period April, 1975 through February, 1976, in the sum of $3,850.
The evidence reflects that beginning in January, 1975, the intrusions of water by reason of rain and ever increasing holes in the roof, seriously interfered with the possession and use of the premises and with the operation of a viable business by the appellants; that in July, 1975, the City of Opa Locka declared the premises unsafe and unfit and, by fiat, ordered the appellants out of the premises and caused the building to be secured against any further entrance for any purpose.
The lower court failed to find any constructive eviction for the period of April through July, when no rent was paid, and the court failed to find actual eviction and termination of the lease by reason of the City's declaration that the building was unsafe and the City's action in dispossessing the appellants, the sole remaining tenant.
A constructive eviction may occur if the landlord does any wrongful act or is guilty of any default or neglect whereby the leased premises are rendered unsafe, unfit, or unsuitable for occupancy in whole or in substantial part, for the purposes for which they were leased. Berwick Corp. v. Kleinginna Investment Corp., 143 So.2d 684 (Fla.3d DCA 1962). In said case, the Appellate Court found the evidence sufficient to constitute a constructive eviction even though the damages then were not permanent in nature.
As in the matter before this court, the landlord in Berwick sought to avoid damages by the defense of a provision of the lease that the lessee was required to take the risk of damage to the property by reason of water, bursting pipes, gas leaks, water system or sewerage leaking, etc. The Appellate Court held:
"This provision of the lease cannot be construed to destroy the effect of the requirement that the landlord keep the roof sound and watertight. In construing a lease, as in other contracts, it is necessary for the Court to gather the meaning of the parties from the whole instrument and not from a few lines taken here and there. Lalow v. Codomo, Fla. 1958, 101 So.2d 390; Proser v. Berger, Fla.App. 1961, 132 So.2d 439. Further, it is the duty of the Court wherever possible to construe apparently conflicting provisions of a contract so that the provisions do not conflict."
The facts in the instant case are strikingly similar to the aforesaid case, with the exception that in the instant case, the Appellants were, after a six (6) month period of constructive eviction, then, actually evicted by order of the City premised on the lessor's failure to maintain the premises in a safe, suitable, and useable condition.
The judgment, dismissing counterclaim, entered July 13, 1976, as well as the judgment in favor of the appellee, entered March 29, 1977, are hereby reversed and the cause remanded to the trial court for further proceedings.
Reversed and remanded.