387 So.2d 440 (1980)
Sterling J. PLANCK, Sr., and Southport Boat Storage and Sales, Inc., a Florida Corporation, Appellants,
v.
TRADERS DIVERSIFIED, INC., a Florida Corporation, Appellee.
No. 77-1132.
District Court of Appeal of Florida, Fourth District.
August 13, 1980.
Rehearing Denied September 23, 1980.
*441 Wilton L. Strickland and Carey M. Fischer of Ferrero, Middlebrooks & Strickland, Fort Lauderdale, for appellants.
Richard W. Wasserman, Miami Beach, for appellee.
DAUKSCH, JAMES C., Jr., Associate Judge.
This is an appeal from a judgment in favor of a broker and against a seller of real estate. The question on appeal is whether the broker had an exclusive listing agreement entitling him to a commission no matter who sold the property to whom during the time period of the listing agreement.
The listing agreement gave the broker one month from this date (and thereafter until this agreement is revoked by ten days' written notice delivered to you), the sole right and authority to find a purchaser for the above described property at the following price and terms, or at any other price and terms acceptable to me:
 Price: $895,000.00¢ Terms: $295,000.00¢ cash,
 and Purchase money Mort. of $600,000.00¢ or all cash. Mort.
 will be held at a rate of 9%, paymt. of $6000.00 per. mo. 
# # # This Listing Agreement pertains only to the above named
 property to be offered for sale to Mr. Phillip Slack of Chicago
 Ill. 
The portion of the agreement which says "# # # This Listing Agreement pertains only to the above named property to be offered for sale to Mr. Phillip Slack of Chicago, Ill." is typed in, as are some other portions of this apparently rather standard printed agreement. This typed part of the agreement limits the right of the broker to negotiate a sale to Phillip Slack. However, in the first part of the agreement, which is part of the printed form, the agreement does not limit the broker's authority and would give the broker the right to collect a commission no matter who sold the property to whom. Thus there is a conflict in the agreement as to the extent of the broker's right. It has been generally held that typed portions of a contract which are at variance or in conflict with printed provisions take precedence and are controlling. MacIntyre v. Green's Pool Service, Inc., 347 So.2d 1081 (Fla. 3d DCA 1977).
The dispute arose in the case because the seller, Planck, sold the property to someone other than Slack during the thirty day period of the listing agreement. Appellee filed suit for a commission on account of that sale. The issue went to trial and a jury returned a verdict for the broker which verdict was reduced to judgment. Appellant urges the trial court erred in denying his motion for directed verdict and erred in entering the judgment. We agree and reverse. In interpreting the agreement, we have applied the standard relating to typed versus printed provisions in a contract. *442 MacIntyre v. Green's Pool Service, Inc., 347 So.2d 1081 (Fla. 3d DCA 1977). We have also considered the law which says ambiguities in a contract are more strictly construed against the drafter. MacIntyre v. Green's Pool Service, Inc., 347 So.2d 1081 (Fla. 3d DCA 1977); American Agronomics Corporation v. Ross, 309 So.2d 582 (Fla.3d DCA 1975). This rule is especially true when the drafter stands in a position of trust, or greater professional or business knowledge, such as a real estate broker. Falovitch v. Adrienne Realty, Inc., 345 So.2d 839 (Fla.3d DCA 1977). The broker in this case drafted the listing agreement so we interpret it in favor of the client/appellant. This leads us to the decision that the agreement limited the broker to the right to collect a commission only if he secured the offer to purchase from Slack within the thirty days and before the appellant sold the property to anyone else. The evidence is clear the broker did not secure the ultimate purchaser, did not produce a contract offer from Slack before the sale to the ultimate purchaser and is entitled to no commission. See also Wilkins v. W.B. Tilton Real Estate and Insurance, Inc., 257 So.2d 573 (Fla. 4th DCA 1971).
REVERSED.
ANSTEAD, J., concurs in conclusion only.
DOWNEY, J., dissents with opinion.
DOWNEY, Judge, dissenting:
The final judgment based upon a jury verdict awarding appellee a real estate brokerage commission should, in my judgment, be affirmed.
The evidence reflects that appellant Planck entered into a listing agreement with appellee Traders Diversified, authorizing Traders to sell appellant's property for a period of thirty days upon certain terms and conditions. The contract provided that appellee was only authorized to sell the property to a specific person, Phillip Slack. However, the contract further provided that a commission would be due appellee whether the purchaser was secured by appellee or Planck. The pertinent portions of said contract are reproduced herein for the sake of clarity:

EXCLUSIVE LISTING AGREEMENT # # #
Date: May 18, 1976
1. In consideration of your agreement to list and to use your efforts to secure a purchaser for the property described as:
_____________________________________________________ Southport Marina, 1335 S.E. 16th Street Fort Lauderdale Fla. _____________________________________________________ _____________________________________________________ I hereby give you for a period of one month from this date (and thereafter until this agreement is revoked by ten days' written notice delivered to you), the sole right and authority to find a purchaser for the above described property at the following price and terms, or at any other price and terms acceptable to me:
Price: $895,000.00¢ Terms: $295,000.00¢ cash, and Purchase money Mort. of $600,000.00¢ or all cash. Mort. will be held at a rate of 9%, paymt. of $6000.00 per. mo. 
# # # This Listing Agreement pertains only to the above named property to be offered for sale to Mr. Phillip Slack of Chicago Ill. 
Interest on encumbrances, taxes, insurance and rents shall be adjusted prorate at date of closing. Improvement liens are to be paid by me.
* * * *
3. For finding a purchaser for the above property:
A. I agree to pay you a commission of SIX % of the sales price.
B. The commission is to be paid whether the purchaser be sesured by you or me, or by any other person, at the price and upon the terms mentioned or at any other price or terms acceptable to me; or if the property is afterwards sold within three (3) months from the termination of this agency, to a purchaser to whom it was submitted by you, or a co-operating broker during the continuance of the agency, and whose name has been disclosed to me.
*443 The contract in question, prepared by Traders Diversified is a form contract which contained blank spaces for specified information to be filled in. The underlined portions of the contract as set out above are the sections completed and typed in by appellee.
Within the thirty day period provided in the contract Russell, a broker representing the appellee, presented Planck with a signed contract from Slack and a check for $10,000 earnest money; however, Russell was then advised by Planck that the property had been sold to another purchaser during the thirty day period. Since the contract provided in Section 3B that a commission would be owed whether a purchaser was secured by Traders or another party, the appellee demanded a 6% commission from Planck. The demand was refused and this litigation ensued.
Appellants contend that the typewritten provisions of the contract, specifically that portion which restricted the prospective purchasers to Mr. Phillip Slack, and paragraph 3B thereof are incompatible, thus creating an ambiguity. With regard to that ambiguity appellants cite several rules of construction which they feel compel a decision of the issue in appellants' favor. First, appellants cite the rule which provides that a contract will be construed most strictly against the party who prepared the contract; i.e., in this case the appellee. Tannen v. Equitable Life Insurance Company of Washington, D.C., 303 So.2d 352 (Fla. 3rd DCA 1974). Secondly, appellants rely on the rule that typewritten portions of a contract must prevail where they are inconsistent with printed portions of the contract. McDonald v. Connell, 158 So.2d 780 (Fla. 2d DCA 1963). Construing the contract in the light of those rules the appellants conclude that the appellee was clearly not entitled to recover a commission.
My consideration of the briefs, record and pertinent case law leads me to believe that the judgment appealed from should be affirmed upon either of two theories. The first theory is that the contract was not ambiguous and by its terms the appellee had the exclusive right to sell for thirty days. The contract was clear that the appellee could only sell to Phillip Slack. Any sale, however, by another within the time specified entitled appellee to a commission. But even if one proceeds on the premise that the contract is ambiguous, the final judgment still should be affirmed. Where a contract is ambiguous parol evidence is admissible to explain the intention of the parties. Royal American Realty Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968). In this case parol evidence was admitted during trial concerning the intention of the parties in contracting as they did. Furthermore, the court charged the jury upon the proper manner for them to resolve ambiguities in a contract, specifically instructing the jury concerning the two rules of construction relied upon by appellants. The jury applied these instructions to the evidence adduced and found in favor of the appellee.
Adverting once again to the first theory, I am persuaded that this contract is not ambiguous. The contract appears to be one containing an exclusive right to sell as opposed to an exclusive agency to sell. Briefly, the distinction is that an exclusive right to sell divests the owner of his right to dispose of the property for the period designated in the contract, whereas an exclusive agency to sell does not prevent the owner himself from selling the property during the agency period. Of course, if the owner has an opportunity to sell the property during the period of an exclusive right to sell, he could sell it himself but he would be liable to the broker for a commission. This is to be distinguished from an exclusive agency where the owner could sell his property within the contractual period with impunity as far as a commission is concerned.
My conclusion that this contract contained an exclusive right to sell is based upon the reasoning found in Flynn v. McGinty, 61 So.2d 318 (Fla. 1952). Therein the court was called upon to construe a brokerage contract and held:
In the instant case there can be no doubt as to what the parties meant by *444 their agreement. It is plainly and unequivocally stated that commission will be earned whether the property was sold "by myself, or through your instrumentality or any other person". These words leave no room for construction or interpretation. Supra 320.
The language upon which the Flynn court predicated its determination is very similar to that found in the contract involved in this case. As noted above, that contract stated: "the commission is to be paid whether the purchaser be secured by you or me or by any other person." It seems to me such language is clear and unambiguous.
Based on the foregoing I believe this contract gives appellee a thirty day exclusive right to sell the property to Phillip Slack. Appellant agreed to pay appellee a commission of 6% of the sales price, which commission would be payable during the thirty day period even if Planck or someone else produced the purchaser. Construing the contract in that way, appellee was entitled to a commission on the facts of this case.
As I previously stated however, if the contract is ambiguous, there is nevertheless evidentiary support in the record and under the instructions of the court to find in favor of the appellee.
In their verdict favorable to the appellee the jury decided that they would not give the appellee interest on the commission (although the court had instructed them they should). However, appellee does not complain of that departure from the instruction, appellant does! It is the appellant's contention that this jury aberration demonstrates that the jury did not understand nor exercise its function properly. This may be true regarding the allowance of interest, but I do not believe that is something the appellant can resort to for a reversal of the judgment.
Accordingly, I would affirm the judgment appealed from.