**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Jerome SKIPPER, Defendant,**

**Mrs. William E. McQuinn and Thomas**
**H. Henderson, III,**
**Sureties–Appellants.**

No. 79–2528.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1981.

Frank J. Petrella, Atlanta, Ga., for sureties–appellants.

Douglas P. Roberto, Asst. U. S. Atty., Atlanta, Ga., for plaintiff–appellee.

Before KRAVITCH, HENDERSON and REAVLEY, Circuit Judges.

HENDERSON, Circuit Judge:

On March 6, 1973, a federal grand jury in Atlanta indicted Robert Skipper for import-ing approximately five pounds of hashish through the mails.[1] On July 18, 1975, Skipper was arrested, and taken before the United States magistrate in the Southern District of Florida on July 21, 1975. At that time a removal hearing was scheduled for July 31, 1975, and bail was set at "$20,-000 S/B [surety bond]." Skipper waived the hearing and agreed to return to Atlanta. Skipper's counsel orally requested that bail be reduced. The magistrate assented, and ordered

> that the defendant's Motion for Reduction of Bond be, and the same is hereby, <u>GRANTED</u>. The defendant's bond is hereby reduced to <u>$50,000, Fifty Thousand Dollars Own Recognizance</u>.
>
> SPECIAL CONDITIONS of the defendant's release are as follows: <u>defendant's mother Mrs. William E. McQuinn and brother–in–law Mr. Thomas Hunter Henderson, III co–sign appearance bond, and the defendant shall reside at: 11435 S.W. 56 St., Miami, Florida during this action</u>.

(The underlined portion was inserted on a prepared form). On the same day an appearance bond[2] was prepared, stating that "if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith." Skipper executed the bond, Thomas Hunter Henderson, III signed on the line marked "SURETY," and Mrs. McQuinn signed below Henderson's signature.

On January 9, 1976, Skipper was ordered to appear for arraignment at the United States Courthouse in Atlanta on January 20, 1976. He failed to appear, and on January 27, 1976, the district court in Atlanta ordered the bond forfeited.[3]

On March 1, 1979, judgment issued on the bond. On April 19, 1979, the court denied remission. The appellant–sureties now seek reversal of the judgment on the

---

1. The indictment also named Skipper's wife, but charges against her were subsequently dismissed.

2. The bond was modeled after illustrative form 17 appended to the Federal Rules of Criminal Procedure, except that it contained no section for justification of sureties.

3. The forfeiture may have been ordered from the bench on January 20, 1976.

forfeiture, or, in the alternative ask that we hold that the district court abused its discretion in denying their petition for remission.[4] The sad circumstances the defendant created for his relatives are, of course, deplorable, but we conclude that the judgments of the district court must be affirmed.

The parties address several issues relating to the manner in which bail was determined. We have serious reservations about whether these matters can be adjudicated at this late date, since Skipper did not appeal the conditions of his release immediately after their imposition, 18 U.S.C.A. § 3147(b). *See, e. g., United States v. Cramer*, 451 F.2d 1198 (5th Cir. 1971). Even if properly before us, however, these arguments are without merit.

■ The appellants maintain that the $50,000.00 bond was excessive, and therefore it should not have been forfeited in the full amount. They suggest that the offense for which Skipper was indicted was not a serious one, and note that the Bail Reform Act provides that a magistrate should not require sureties unless other enumerated conditions "will not reasonably assure the appearance" of the accused. 181 U.S.C.A. § 3146(a)(4).

As noted, Skipper was free to appeal the conditions of his release at the time of the magistrate's order, 18 U.S.C.A. § 3147(b). The Supreme Court has cautioned against granting habeas corpus relief before this avenue has been exhausted. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). The courts of appeals have consistently held that precise observance of the statutory review procedures is a prerequisite to appellate amendment of the terms and conditions of release. *See e. g., Grimes v. United States*, 394 F.2d 933 (D.C.Cir. 1967); *Shackleford v. United States*, 383 F.2d 212 (D.C.Cir. 1967). Similarly, after the entry of a judgment of conviction they have refused to consider questions relating to pretrial release. *United States v. Marx*,

485 F.2d 1179, 1184 (10th Cir. 1973); *United States v. Williams*, 416 F.2d 4, 9 (5th Cir. 1969); *Hemphill v. United States*, 392 F.2d 45, 47 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968); *Hewitt v. United States*, 110 F.2d 1, 6 n.3 (8th Cir.), *cert. denied*, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409 (1940). Of course, Skipper has not yet been convicted. Indeed, he has not yet been apprehended. Nevertheless, the principle announced in these cases—that conditions of release should be appealed, if at all, upon their imposition—is plainly relevant. Assuming we should reach the matter now, we may certainly consider the fact that Skipper jumped bail. Having the benefit of hindsight, it seems obvious to us now that the conditions of release were inadequate and the amount of the bond was too small.

■ The appellants insist that in any event they were not sureties on the bond. They point out that in his Order Reducing Bond the magistrate stated that the $20,000.00 surety bond was "reduced to $50,000, Fifty Thousand Dollars Own Recognizance," and that the bond itself stated that "We, the undersigned, . . . are bound to pay the United States of America the sum of Fifty Thousand dollars ($50,000.00–Own Recognizance)." Like the district court, we can reach no conclusion except that the appellants were sureties. *Cf. United States v. Jackson*, 465 F.2d 964, 965 (10th Cir. 1972) (clear error); *United States v. Gonware*, 415 F.2d 82, 83 (9th Cir. 1969) (bond is a contract to be construed to give effect to intent of parties). One of the conditions of the Order Reducing Bond was the requirement that Mrs. McQuinn and Thomas Henderson "co–sign [the] appearance bond." The bond itself stated unequivocally that Skipper and the appellants would have to pay the United States if Skipper failed to appear as ordered. Henderson signed the bond as surety, as did Mrs. McQuinn.

---

4. Pretrial release of federal defendants is governed by the Bail Reform Act of 1966, 18 U.S.C.A. §§ 3141–3152, and F.R.Crim.P. Rule 46.

*See generally*, 8B *Moore's Federal Practice* ¶ 46 (1980).

■ Finally, the appellants urge that the forfeiture should be set aside because the magistrate failed to require them to "justify by affidavit" as provided in Rule 46(d), F.R.Crim.P. That rule states that "[n]o bond shall be approved unless the surety thereon appears to be qualified." Little has been written about the justification requirement, but the case law makes clear that sureties must reveal their property resources so that the government can be assured of their financial ability and so that the court can be satisfied that they have an incentive and purpose to secure the defendant's presence at trial. *United States v. Nebbia*, 357 F.2d 303 (2nd Cir. 1966); *see generally* 8B *Moore's Federal Practice*, ¶ 46.12[2] (1980). Since Rule 46(d) was designed to protect the government, the appellants cannot avail themselves of the magistrate's failure to follow its mandate.[5] In any case, the rule allows non–corporate sureties such as the appellants to justify by affidavit, *cf.* illustrative form 17, F.R. Crim.P., and the appellants do not explain how compliance would have affected their conduct.

Moving on to the problem of whether the district court erred in refusing to remit part of the forfeited bond, we are limited in our review by the division of functions between trial and appellate courts. In our opinion, the district court did not abuse its discretion in denying remission.

■ The district court may remit a forfeited bond, in whole or in part, "if it appears that justice does not require the enforcement of the forfeiture." F.R. Crim.P. 46(e)(2), (4). The parties agree and it is beyond dispute that the district court's determination may be overturned only if it acted in an arbitrary or capricious manner. *United States v. Parr*, 594 F.2d 440, 443–44 (5th Cir. 1979); *United States v. Bass*, 573 F.2d 258, 260 (5th Cir. 1978); *United States v. Shelton*, 444 F.2d 522, 523 (5th Cir. 1971).

■ Thomas Henderson is a young married man charged with the care of his father. Mrs. McQuinn is a widow, and cancer treatment has dissipated much of what little property she once had. Both assert, and the government does not deny, that enforcement of the forfeiture will result in financial hardship. Moreover, the government admits the appellants have cooperated in its search for defendant. On the other hand, the United States has spent substantial amounts of money seeking Skipper, who is still at large.[6]

As the district judge observed, "this case presents an unquestionably sad situation for the sureties." We agree, but it is sad because of the distress this young man has caused his family, not because the government insists that its contract be honored. The district court said, and its opinion evinces deep reflection, that "[g]iven that the defendant has not yet been located" remittance would be inappropriate.

Release is conditioned on the execution of a bail bond in order to assure the presence of the accused, 18 U.S.C.A. § 3146. Remission of forfeited bonds while their subjects are still at large would undermine that purpose. The duty rested with the district court to make the decision on remission. Our task is only to determine whether that decision was arbitrary and capricious, not to substitute our discretion for that of the district judge. *United States v. Davis*, 202 F.2d 621, 624–25 (7th Cir.), *cert. denied*, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953).

---

5. In *United States v. Jackson*, 465 F.2d 964 (10th Cir. 1972) the court cited the failure to follow Rule 46(d) procedure as support for its determination that the appellant was not a surety on a bond he had not signed. As discussed earlier, we are satisfied that the appellants are contractually bound.

6. No case has been cited and we have found none remitting a forfeited bond while the defendant was still at large. *Cf. United States v. Davis*, 202 F.2d 621, 624 (7th Cir.), *cert. denied*

345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953) (congressional remission was usually limited to cases where the bondsman produced the defendant); *Smith v. United States*, 357 F.2d 486, 490 (5th Cir. 1966); *United States v. Public Service Mutual Ins. Co.*, 282 F.2d 771, 772 (2d Cir. 1960) (no remission even when surety causes recapture); *United States v. Bass*, 573 F.2d 258, 260 (5th Cir. 1978) ("ultimate appearance of the defendant as grounds for remission").

**1181**

Under the facts and circumstances of this case, we cannot say that the district court abused its discretion.

AFFIRMED.

KRAVITCH, Circuit Judge, dissenting:

Respectfully I dissent. This case hinges on the designation of the bond: Is it a recognizance bond, an unsecured appearance bond with special conditions, or a surety bond? The majority, as did the trial judge, concludes it is a surety bond and subject to forfeiture. I disagree.

From the beginning, the circumstances surrounding the matter of bail were marked by confusion and uncertainty. Upon the indictment of Skipper in Atlanta, the praecipe and warrant issued by the U.S. Attorney for the Northern District of Georgia recommended a surety bond in the amount of $10,000, the customary bond for the offense charged (importation of five pounds of a marijuana derivative). The magistrate in Florida where Skipper was arrested instead set a $20,000 surety bond. On motion for reduction of bail, the magistrate *granted* the motion and set bail at "$50,000–own recognizance."[1] On the magistrate's removal order the printed word "surety" was crossed out and "recognizance" substituted. A printed form was utilized for the bond. The typewritten words "$50,000–own recognizance" were added in two places and "surety" crossed out. The forfeiture clause, however, was not deleted and appellants signed above the line marked "surety."[2]

I agree with the majority that a bond is a contract and should be construed under the applicable state law. *United States v. Gonware*, 415 F.2d 82 (9th Cir. 1969).

Here, the modifications to the bond form resulted in irreconcilably contradictory provisions: the meanings of "surety" and "own recognizance" are completely different. Where such occurs, under Florida law, the written or typed provisions prevail. *Allegheny Mutual Casualty Co. v. State*, 176 So.2d 362 (Fla.App.1965). *Allegheny* also involved a bail bond. There, a typewritten

1. The Bail Reform Act, 18 U.S.C. § 3141 *et seq.* provides for release of an accused upon his *own recognizance, execution of an unsecured* appearance bond in an amount determined by the judicial officer, but authorizes the officer to require a bail bond with sureties or to impose conditions which he deems necessary to insure appearance. The Bail Reform Act provides:

(a) Any person charged with an offense, other than an offense punishable by death, *shall*, at his appearance before a judicial officer, be ordered released pending trial *on his personal recognizance or upon the execution of an unsecured appearance bond* in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance *of the person as* required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) *place the person in the custody of a designated person* or organization agreeing to supervise him;

(2) *place restrictions on the* travel, association, *or place of abode of the person during the period of release*;

(3) require the execution of an appearance bond in a specified amount and the deposit in *the registry of the court, in cash or other* security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

18 U.S.C. § 3146 (emphasis added).

2. The majority points to the language in the order requiring that appellants co–sign the appearance bond. What this means is not made clear in the record. The government construes this to mean appellants were jointly liable for the $50,000 if Skipper did not appear. If this were true, appellants would essentially be sureties, which in turn would mean the bond was "reduced" from a $20,000 surety bond to a $50,000 surety bond. A more reasonable explanation is that appellants co–signed the bond to signify their agreement to an express special condition–that Skipper reside at appellant McQuinn's residence–and perhaps an unwritten one–that appellants supervise Skipper. *See* 18 U.S.C. § 3146(a)(1), (2).

clause and a handwritten clause concerning the limit of a surety's liability conflicted with language in the standard form on which the former were written. The court observed:

> [T]here is the rule, applicable and directly controlling here, that where part of a contract is written or typed and part is printed, and the written or typed and the printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the total instrument, the words in writing or typing will control. The reason for the according of greater effect to the written or typed part as against the printed portion if they are inconsistent is that the written or typed words are the immediate language and terms selected by the parties themselves to express their meaning, while the printed form is intended for general use without reference to particular objects and aims. A court will, however, resort to this rule only from necessity when the written or typed words or clauses and the printed words or clauses cannot be reconciled; otherwise the duty of the courts to give effect to all the terms and language of the agreement is imperative. 17 Am. Jur.2d, Contracts, section 271, Relation and inconsistencies between written, typewritten, and printed matter, page 679. *See also* 17A C.J.S. Contracts § 310, pages 168, 169, 170; *Nat Harrison Associates, Inc. v. Florida Power & Light Company*, Fla.App.1964, 162 So.2d 298.

*Allegheny Mutual*, at 365. *See also MacIntyre v. Green's Pool Service, Inc.*, 347 So.2d 1081 (Fla.App.1977); *Ralston v. Miller*, 357 So.2d 1066 (Fla.App.1978). In the case before us, the typed words cannot be reconciled with the printed form. Moreover, the only logical interpretation of the magistrate's act in granting the motion to *reduce* but changing the bond from "$20,000 surety" to "$50,000—own recognizance" is that although the magistrate increased the *amount*, he reduced the *category* from surety to recognizance.[3]

It should further be noted that the construction of a contract with conflicting provisions is, under Florida law, a question of law, not a question of fact. *MacIntyre*, at 1084. Thus, this court can make its own construction of the contract. I would hold that as a matter of law this bond is not a surety bond subject to forfeiture.[4]

Assuming arguendo that the contract is an enforceable surety bond, I believe the court erred in not remitting the bond, if not in whole, then in part. Rule 46(e)(4) Fed.R. Crim.P. authorizes such remission if it appears that justice does not require the enforcement of the forfeiture. Our standard of review in bond forfeiture and remission cases is whether the trial court abused its discretion. Discretion, however, cannot be exercised arbitrarily or willfully but with regard to what is right and equitable under the circumstances and law and directed by reason and conscience of the judge to a just result. *United States v. Parr*, 594 F.2d 440 (5th Cir. 1979). The purpose of a bail bond is not punitive. Its object is not to enrich the government or punish the defendant. *Dudley v. United States*, 242 F.2d 656 (5th Cir. 1959).

The majority, as did the district judge, rejects any consideration of remission because Skipper has not yet been apprehended and cites cases that remission is usually contingent upon appearance of the defendant. But the usual rule should not govern this case. In the cases cited, the validity of the surety bond was not in dispute. Moreover, Rule 46(e)(2), (4) does not condition remission upon appearance of the defendant.

---

**3.** In addition, the magistrate did not require appellants to "justify by affidavit." The majority correctly points out that this failure does not prove the bond was not a surety. It is, however, evidence that the magistrate did not intend the bond to be a surety.

**4.** The majority notes that it is too late to appeal the conditions of release. This point is not relevant; at issue here is the proper construction of the bond, not an appeal of the conditions of release. Moreover, the question of remission, discussed *infra*, is not affected by whether the conditions are currently appealable.

In view of the questionable nature of the bond, the appellants' complete cooperation with the government upon the disappearance of Skipper, and the financial hardship which forfeiture will produce,[5] the trial court's refusal to consider these factors in favor of a rigid "no show—no remission" rule constituted an abuse of discretion.

In my opinion, the bond should have been remitted, if not in its entirety, at least to the amount of $20,000 originally set as an unquestioned surety bond. To hold otherwise is contrary to the teachings of *Parr, supra*, of what is right and just under the circumstances.

---

5. Appellant Henderson's sole asset is his home which he co–owns with his aged father; appellant McQuinn, suffering from cancer, has assets of only $9,000.00.