**CAROLINA METAL PRODUCTS CORPORATION, Appellant,**

v.

**Robert LARSON and Flame Foil, Inc., Appellees.**

No. 23644.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1968.

W. David Rogers, Jr., Leon H. Handley, Orlando, Fla., Roy Thomas Clark, Pittsburg, Pa., for appellant.

William B. Mesmer, Orlando, Fla., for appellees.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

GODBOLD, Circuit Judge:

This is an appeal from a judgment n. o. v. for the defendant Robert Larson, entered after a jury verdict for the plaintiff Carolina Metal Products Corporation against Larson and Flame Foil, Inc. The single issue is whether the trial court correctly ruled that a written contract between Carolina and Flame Foil was such an integration of the negotiations and agreements between the parties as to exclude parol evidence of an alleged prior oral contract between Carolina and Larson.

In late August 1963 Larson began discussions with Carolina for manufacture of 150,000 heaters, or "smudge pots," made of light metal and to be used in Florida citrus groves. In early September Larson applied for and obtained a corporate charter for Flame Foil, Inc., a $1,000 corporation.

After further negotiations later in September, Carolina began making the heaters. All shipments of heaters were invoiced to Flame Foil and all except a token initial shipment to Larson were shipped to Flame Foil. When production was approximately 25% complete Carolina requested a written authorization from Larson and his attorney, and Larson's attorney drafted a detailed purchase order which named Carolina as vendor and Flame Foil as purchaser, showed the addresses of both companies, set out

the order of 150,000 heaters, terms, price, shipping instructions, and rights of the purchaser to dies and molds after the sale. It was unconditional in form. The order was signed under seal in the name of Flame Foil, by Larson as president, then sent to Carolina whose president executed it. Two days later a similar purchase order was prepared and signed by the same parties covering dies which Carolina had obtained for fabricating the heaters.

Carolina was not paid, and it sued Larson claiming an oral contract with him for the heaters. Larson answered that the written contract with Flame Foil was a complete integration of the transaction and that Larson had no individual contract. Flame Foil intervened, acknowledging its obligation under the written contract.

Because of the result we reach we do not explore the numerous details of matters occurring prior to execution of the purchase orders and tending to show whether Larson individually or Flame Foil was the purchaser—oral orders, negotiations, billing instructions, securing of credit information, preparations of drawings and other dealings.

Carolina sued, and recovered, on an alleged oral contract with Larson antedating the purchase orders executed by Flame Foil. Its theory of liability of Larson is a two-stage one—first that Larson was acting in a representative capacity for Flame Foil, and did not reveal the fact of his capacity and the identity of his principal, hence he could not escape individual liability. Second, to escape the effect of the purchase orders and the so-called "parol evidence rule" its approach is that the purchase orders did not so integrate the negotiations and prior agreements as to make

Flame Foil the sole purchaser and as to make of no jural effect the prior negotiations and agreement with Larson.[1]

The mere circumstance that there is a writing does not alone make the writing the sole memorial of the transaction even to the extent covered by the writing. "The mystery of the written word" is not such that it closes the door to a determination of whether the paper documents were assented to as an integration. See 3 Corbin § 582. "Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract?" 3 Corbin § 573, at 359. The face of the instrument is of some help in deciding this issue.[2] If a particular element of the extrinsic negotiation is dealt with in the writing it is probable that the writing was meant to embody that element of the negotiation. 9 Wigmore § 2430. Here the writings embody the whole transaction. They show price, number of units, shipping instructions, and rights of the parties after the transaction is completed. They are unconditional in form. They call for the signature of both parties, and are signed by both. The president of Carolina acknowledged they covered the substance of the transaction in all respects and that his only difference with them was that they named Flame Foil as the purchaser.

The chief and most satisfactory index to determine the intent of the parties to an agreement as to whether they intended their written contract to be a complete and final statement of the whole transaction is whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in

---

1. This not a case in which there is a question whether a contract of purchase was made at all, but by whom it was made, and there is no dispute of execution of the purchase orders by the signatories. See 3 Corbin, Contracts § 577 (1960) (hereinafter cited as Corbin). There is no claim of suretyship or guaranty.

2. It is not required that every aspect of the whole transaction be integrated into one document for the integration to be effective. 9 Wigmore, Evidence § 2430 (3d ed. 1940) (hereinafter cited as Wigmore).

the writing, then presumably the writing was meant to represent all of the transaction on that element.

Greenwald v. Food Fair Stores Corp., 100 So.2d 200, 202 (Fla.App.1958).

■ Extrinsic evidence may be even more helpful in deciding whether there has been an integration, and no rule bars "parol evidence" or any other relevant evidence for the purpose of determining whether the parties have agreed upon the writing as a complete and accurate statement of what is agreed upon between them. Farmer v. Arabian American Oil Co., 277 F.2d 46 (2d Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960); 3 Corbin §§ 573 & 582; Restatement of Contracts § 228 (1932). The writings were requested by the president of Carolina, who asked for "something in writing to back up what we were doing." The conduct of the parties after the purchase orders were signed is relevant. Shipments continued to be made to Flame Foil and invoiced to Flame Foil. Flame Foil was billed; Larson was never billed. There is evidence, though disputed, that Carolina asked Larson in January to give it a personal guarantee of the account. Flame Foil sent corporate notes to Carolina in payment of the account; Carolina returned them on the ground it was unable to discount them; it did not assert that the maker was the wrong party.

■ Is the issue of whether the parties intended writings to be an integration one for the court or the jury, since there are factual inquiries tied up in this preliminary question of law? Wigmore considers the factual inquiry one for the court only and not properly submitted to the jury at all. 9 Wigmore § 2430 & n. 3. Corbin considers that determination by the court is wiser but that "there is no law against getting [such] aid" of the jury when the evidence of what the parties said and did is so nearly equal in weight and credibility that the court desires the aid of a jury verdict. 3 Corbin § 595. In South

Florida Lumber Mills v. Breuchaud, 51 F.2d 490 (5th Cir. 1931), a Florida case, this Circuit, relying on Wigmore, § 2430, referred to the duty as on the trial court. Under any view of the authorities the trial court was empowered to determine the issue in this case.

■ The trial judge followed an appropriate procedure to present questions for appeal while preserving the benefits of a jury determination after a lengthy trial, by submitting to the jury Carolina's contentions of liability on the oral contract but reserving for determination by the court after verdict the question of law of whether the writings were an integration. The court's conclusion on the preliminary determinations of fact supporting its ruling of law is, though not beyond appellate review, primarily for the trial court and not subject to reversal on differences of opinion as to weight of evidence. See 3 Corbin § 573 nn. 5 & 8. However, we are in full agreement with the trial court that the weight of the evidence showed the documents were intended to be an integration.

■ The trial court having correctly determined that the writings were a complete integration, the pieces fall into place. One of the matters covered by what the court found to be the agreement was the identity of the purchaser. There is no claim of fraud, mistake or duress, and no problem of interpretation. Once identity of the purchaser of the 150,000 heaters is laid to rest the earlier oral dealings that relate to identity become immaterial.

■ To escape this ultimate result Carolina makes an alternative argument before us that parol evidence is admissible to show that Larson is the known but unmentioned principal of Flame Foil on the purchase orders, and that once this is established the written document is evidentiary that the original oral agreement was with Larson. This evidentiary circumlocution violates both purpose and effect of the parol evidence rule, which is not procedural or evidentiary but is a substantive principle of

contract law establishing what is the contract between the negotiating parties. Once it is determined that the purchase orders are the contract and that by the terms thereof Flame Foil is the purchaser, the latter conclusion cannot be relegated to an evidentiary status to give substantive life and vitality to predecessor oral dealings which have been determined not to be the contract, and thereby destroy the substantive effect of the written contract.

Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties. No contract whether oral or written can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday; but what happened yesterday cannot change the effect of what happens today.

\* \* \* \* \* \*

But after these issues [of whether a subsequent agreement modifies and discharges a previous oral agreement] have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement. They are of yesterday; and their jural effect has been nullified by the events of today.

3 Corbin § 574. See also *id.* §§ 576 & 582.[3]

Two authorities strongly urged by Carolina require only brief mention. In Griffith-Durney Co. v. Alton Mercantile Co., 92 Okl. 54, 217 P. 1047 (1923), the court using a real party in interest analysis, allowed plaintiff to recover on an oral contract with a broker, although plaintiff had signed subsequent written agreements covering the same subject matter with companies for whom the broker claimed to be agent. The trial court rejected the broker's defense that all negotiations had "merged" [i. e., integrated] into the written contracts, and this finding of fact was affirmed.

Fuller v. Fried, 57 N.D. 824, 224 N.W. 668 (1928), properly allowed parol evidence to show that the writing was not a legal contract at all but merely a memorandum giving a description of machinery purchased and price to be paid. See 9 Wigmore § 2429.

See also, Kingsbery v. Phillips Petroleum Co., 315 S.W.2d 561 (Tex.Civ. App.1958). This was an unsuccessful effort by Kingsbery, an organizer of a corporation, to sue Phillips for breach of an oral contract made with Kingsbery individually, in the face of a subsequent written contract between Phillips and the corporation covering the same subject matter. The decision is criticized by Professor Corbin, 3 Corbin § 596, at 573 n. 8, but on the ground that the issue of whether the written contract

---

3. A conceivable interpretation of the facts might have been that Flame Foil signed the purchase orders as agent for Larson, a known but unnamed principal, and that Larson was liable on that *written* contract along with his agent Flame Foil. The authorities are divided on whether extrinsic evidence is admissible to show that the known but unnamed principal is chargeable on the written contract. See generally 9 Wigmore § 2438. Love v. Brown Dev. Co., 100 Fla. 1373, 131 So. 144 (1930), and Thomas Gordon Malting Co. v. Bartels Brewing Co., 206 N.Y. 528, 100 N.E. 457 (1912), relied on by Carolina, are cases of this nature. Other authorities hold the known but unnamed principal on the theory he is the real party in interest.

Pleins v. Wachenheimer, 108 Minn. 342, 122 N.W. 166 (1909). But this avails Carolina nothing. At all stages, trial and appellate, it has disclaimed any assertion of liability on the written orders and has claimed on the alleged oral agreement with Larson as principal or as agent for an undisclosed principal. Presumably this position has been taken to avoid running afoul of the principle that since the purchase orders were under seal no one not named therein could be liable thereon. Hill v. Gratigny Plateau Dev. Corp., 52 F.2d 142 (6th Cir. 1931) (applying Florida law); Bellaire Securities Corp. v. Brown, 124 Fla. 47, 168 So. 625 (1936); 2 Williston, Contracts § 296 (3d ed. 1959).

discharged and nullified the prior oral contract should have been submitted to the jury, since Kingsbery did not sign the written agreement on behalf of the corporation and testified he had never seen it until after the suit was begun. There is no such problem in this case. Larson was the dominant, and except for his attorney, the sole, participant on the purchaser's behalf and signed the purchase orders as president of Flame Foil.

Affirmed.