CLARK, Chief Judge:
 

 I. Introduction.
 

 Great Southwest Corporation (GSW) and its sureties appeal from a district court
 
 *161
 
 order denying their motion for judgment notwithstanding the verdict, to alter or amend the judgment, for a new trial, or for remittitur in this breach of contract action. We affirm in part, vacate in part, and remand for further proceedings.
 

 II. Facts.
 

 A. Background.
 

 The City of Tampa, Florida (the City) contracted with GSW to build the Tampa Performing Arts Center. On April 4, 1985, GSW subcontracted with Sorrels Steel Company, a Mississippi corporation, (Sorrels) to provide the detailing, fabrication, and delivery of certain structural and miscellaneous steel. Documentation of the subcontract was in the form of a purchase order (the Purchase Order). The Purchase Order provided for “inspection” of the fabricated steel at Sorrels’ plant but specifically excluded “testing.”
 

 Production under the Purchase Order began in mid to late July 1985. Sorrels soon found that it could not maintain a smooth fabrication schedule because of incomplete and inaccurate contract drawings, slow approval of its shop drawings, and numerous design changes. In addition, the City imposed a rigorous testing program which required ultrasonic testing of 100 percent of all full-penetration welds and magnetic-particle testing of 30 percent of all fillet welds. Sorrels submitted to the testing program but indicated that it would need a change order because testing was specifically excluded from its contract. The testing program significantly increased Sorrels’ production time.
 

 Sorrels sent correspondence and various documents to GSW seeking additional compensation for the delays and extra costs associated with these problems and changes. Sorrels informed GSW that fabrication was proceeding in piecemeal fashion and that Sorrels’ damages were total-ling approximately $200,000 per month. GSW forwarded Sorrels’ claims and documentation to the City and assured Sorrels it would be kept informed of progress on the claims.
 

 On November 8, 1985, Sorrels filed suit against GSW in Mississippi state court for breach of contract because the claims had not been satisfactorily resolved. GSW took the position that Sorrels’ damages were caused by the City and its architect and did not result from a breach of the Purchase Order.
 

 B. The Addendum To Purchase Order.
 

 On November 24, 1985, the parties and their attorneys met in Fort Lauderdale, Florida to discuss the possibility of settling the lawsuit. After negotiations, the parties executed a document entitled “Addendum To Purchase Order” (Addendum). The Addendum stated, among other things, that Sorrels’ “impact” claim for damages from incomplete and inaccurate contract drawings, slow approval of its shop drawings, and numerous design changes, as expressed in the pending action
 

 is the responsibility of parties other than GSW and that GSW will present the claim to the City of Tampa or will cooperate with Sorrels in the event Sorrels elects to present the claim in its own behalf. It is intended that this is a “Pass Thru Agreement” and as against GSW, Sorrels will only be entitled to have and receive the amount of the claim that GSW recovers against other parties....
 

 The Addendum dealt separately with Sorrels’ claim for additional compensation based on the City’s testing program. The Addendum indicated that the City would issue a change order to GSW for the testing program and that GSW would in turn issue a change order to Sorrels. Sorrels agreed to document the value of the testing change. Sorrels also agreed to dismiss its lawsuit against GSW “without prejudice” and to continue fabricating steel. In addition to signing the Addendum, GSW orally agreed to obtain a complete and accurate set of contract drawings for Sorrels and to expedite the orderly approval of Sorrels’ shop drawings, so that Sorrels could fabricate steel in an efficient manner.
 

 The situation did not improve for Sorrels after the Addendum was executed. GSW did not provide Sorrels with a complete and accurate set of contract drawings as it had
 
 *162
 
 promised, nor did GSW expedite the orderly approval of Sorrels’ shop drawings. Sorrels was again reduced to fabricating- steel on a piecemeal basis at substantial losses. As Sorrels received contract payments from GSW, it executed releases of its claims against GSW and the City. Some of these documents included releases of GSW and the City from all claims for delay and extra work.
 

 On February 21, 1986, Sorrels sent GSW documentation to support the value of its testing claim. GSW forwarded the documentation to the City. Because the City did not quickly resolve the claim, Sorrels sent GSW a second, professionally prepared testing claim, which GSW delivered to the City. Sorrels did not receive a change order reflecting the increased costs of the weld-testing program. Sorrels eventually went out of business and sold its assets at distress prices.
 

 C. The Present Action.
 

 On April 16, 1986, Sorrels again brought suit against GSW in Mississippi state court
 
 for
 
 breach
 
 of
 
 contract. Sorrels sought recovery of its “impact and testing” damages and loss-of-going-concern damages. GSW removed the case to federal court based on diversity of citizenship and defended on the grounds that Sorrels’ damages were caused by the City and its architect, that the Addendum precluded Sorrels from recovering its damages from GSW, and that Sorrels had executed written releases of all claims against GSW. GSW also filed a counterclaim against Sorrels for breach of contract.
 

 GSW subsequently filed a motion to transfer the case to the district court in Tampa, Florida so that the City and its architect could be joined as parties. The district court denied the motion. GSW then moved for dismissal under Fed.R. Civ.P. 19(b), claiming that the City and its architect were indispensable parties. That motion was also denied. The case proceeded to trial before a jury.
 

 During the course of the trial, Sorrels sought to introduce evidence of GSW’s oral promise to obtain a complete and accurate set of contract drawings and to expedite the orderly approval of Sorrels' shop drawings. GSW objected to this evidence on the ground that it contradicted the express terms of the Addendum and was therefore barred by the parol evidence rule. The district court overruled GSW’s objection. Sorrels also sought to introduce evidence that the parties did not intend the releases to discharge GSW from all liability for Sorrels’ damages. GSW again objected that the evidence was barred by the parol evidence rule. The court also overruled this objection.
 

 The case was submitted to the jury on special interrogatories. The jury concluded as follows: (1) GSW materially breached its contract with Sorrels; (2) Sorrels was damaged as a proximate result of GSW’s breach; (3) Sorrels sustained damages from “impact and testing” amounting to $1,288,000; (4) Sorrels was not precluded from recovering damages incurred prior to November 24, 1985 by signing the Addendum; (5) Sorrels did not discharge its claims against GSW by signing the releases; (6) Sorrels sustained damages of $500,-000 for loss of a going concern as a proximate result of GSW’s breach; (7) Sorrels failed to mitigate its damages in the amount of $80,000; and (8) Sorrels did not breach its contract with GSW. The jury awarded Sorrels a total of $1,708,000.
 

 The district court awarded prejudgment interest to Sorrels under Florida law and entered final judgment against GSW and its sureties for $2,097,604.10. GSW filed a timely motion for judgment notwithstanding the verdict, to alter or amend the judgment, for a new trial, or for remittitur. The district court denied the motion in all respects.
 

 GSW now appeals, contending that the district court erred in admitting parol evidence which negated the express terms of the Addendum and the releases, in allowing the jury to award loss-of-going-concern damages, in awarding Sorrels prejudgment interest under Florida law, and in denying GSW’s motion for dismissal under Fed.R. Civ.P. 19(b). We affirm in part, vacate in part, and remand for further proceedings.
 

 
 *163
 
 III. Analysis.
 

 A. Sorrels’ “Impact” Claim.
 

 The jury awarded Sorrels damages for the “impact” caused by incomplete and inaccurate contract drawings, slow approval of its shop drawings, and numerous design changes. This recovery included damages that Sorrels suffered both before and after the parties signed the Addendum. At trial, the district court allowed Sorrels to introduce evidence that GSW orally agreed at the time the Addendum was executed to provide Sorrels with a complete and accurate set of contract drawings and to expedite the orderly approval of Sorrels’ shop drawings. According to Sorrels’ version of this oral agreement, Sorrels would dismiss its then-pending state lawsuit against GSW “without prejudice” with the understanding that Sorrels could refile the lawsuit if GSW breached its oral promise concerning the contract and shop drawings.
 

 GSW argues that the district court erred in admitting parol evidence of this oral “side” agreement because it contradicts the Addendum’s express statement that Sorrels’ impact claim, as framed in Sorrels’ first lawsuit, “is the responsibility of parties other than GSW” and that “Sorrels will only be entitled to have and receive the amount of the claim that GSW recovers against other parties.... ” GSW contends that the district court should have directed a verdict for GSW on Sorrels’ impact damages and required Sorrels to look to the City for compensation. GSW argues alternatively that the court should have instructed the jury that it was to find whether GSW agreed to resolve the contract and shop drawings problems in the future, thereby preserving the parties’ “Pass Thru Agreement” with respect to Sorrels’ pre-Addendum impact damages.
 

 In
 
 Marianna Lime Products Company v. McKay,
 
 147 So. 264 (Fla.1933), the Florida Supreme Court articulated the parol evidence rule as it relates to oral “side” agreements:
 

 [T]he existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proved by parol, if under the circumstances of the particular case it may be properly inferred that the written paper was not intended to be a complete and final statement of the whole transaction between them, and it appears further that the oral agreement is wholly collateral and relates to a subject distinct from that to which the written contract applies....
 

 Id.
 
 at 266-67..
 

 The district court has the duty to determine whether a written contract contains the complete agreement of the parties and hence whether to allow the factfinder to consider parol evidence of an oral side agreement.
 
 Brown v. Financial Service Corp.,
 
 489 F.2d 144, 149 (5th Cir.1974). “To answer that question [the] court should consider the writing as well as the circumstances surrounding its execution, and parol evidence and extrinsic evidence may be used in making this determination.”
 
 Id.
 
 (citations omitted);
 
 accord Burgan v. The Pines Co. of Georgia, Ltd.,
 
 382 So.2d 1295, 1296 (Fla.Dist.Ct.App.1980). The district court may also submit the question of liability on an oral side agreement to the jury while reserving for later decision the legal question of whether the written document contains the complete agreement of the parties. This procedure has the advantage of “preserving the benefits of a jury determination after a lengthy trial.”
 
 Carolina Metal Products Corp. v. Larson,
 
 389 F.2d 490, 493 (5th Cir.1968).
 

 In this case, the district court admitted Sorrels’ parol evidence and submitted to the jury the question of GSW’s pre- and post-Addendum impact liability on the alleged oral agreement. After the jury entered its verdict in favor of Sorrels, the district court denied GSW’s motion for judgment notwithstanding the verdict, in effect ruling that the Addendum did not contain the parties’ complete agreement and that the subject of the oral side agreement was wholly collateral to the writing. While the district court followed an acceptable procedure in admitting the parol evidence and reserving its ruling on the integration issue,
 
 see Larson,
 
 389 F.2d at 493, we agree with GSW that the court should
 
 *164
 
 only have allowed the jury to consider whether GSW was liable for Sorrels’ post-Addendum impact damages.
 

 1. Pre-Addendum impact damages.
 

 Sorrels’ assertion that it could refile its lawsuit for pre-Addendum impact damages against GSW if GSW did not provide correct contract drawings and expedite the approval of Sorrels’ shop drawings is inconsistent with the express terms of the Addendum. The Addendum provides that Sorrels’ impact claim, as constituted prior to execution of the Addendum, “is the responsibility of parties other than GSW and that GSW will present the claim to the City or will cooperate with Sorrels in the event Sorrels elects to present the claim in its own behalf.” The Addendum further characterizes itself as a “Pass Thru Agreement” and states that Sorrels “will only be entitled to have and receive the amount of the claim that GSW recovers from other parties.” Allowing Sorrels to recover its pre-Addendum impact damages from GSW negated the parties’ statement that GSW was not responsible for those damages and the parties’ designation of the Addendum as a “Pass Thru Agreement.”
 

 Sorrels argues that its agreement to dismiss its pre-Addendum impact claim against GSW “without prejudice” creates an ambiguity in the parties’ “Pass Thru Agreement” which warrants the introduction of parol evidence. We disagree. If the parties had agreed that the “Pass Thru Agreement” was contingent on GSW’s promise to obtain a complete and accurate set of contract drawings and to expedite the approval of Sorrels’ shop drawings, the parties “naturally and normally” would have included that understanding in the Addendum.
 
 South Fla. Lumber Mills v. Breuchaud,
 
 51 F.2d 490, 493-94 (5th Cir.),
 
 cert. denied,
 
 284 U.S. 659, 52 S.Ct. 37, 76 L.Ed. 558 (1931). The Addendum contains no such understanding.
 

 One other possible construction of the Addendum would uphold the jury’s award of pre-Addendum impact damages against GSW. The Addendum required GSW to “present [Sorrels’ impact] claim to the City” or to “cooperate with Sorrels” in presenting the claim on its own behalf. If GSW failed to do so, as Sorrels contended at trial, Sorrels would be entitled to disregard the “Pass Thru Agreement” and recover its impact damages from GSW as general contractor. GSW would then be required to recover these damages from the City and its architect.
 

 However, there is no evidence in the record that GSW failed “to present the claim to the City” or “to cooperate with Sorrels” in presenting the claim on its own behalf. On the contrary, the evidence shows that GSW sent all of Sorrels’ requests for impact damages to the City but that these requests were insufficiently documented. The only evidence Sorrels offered to prove that GSW failed to “present” the claims to the City was that Sorrels sent documented estimates of its impact damages to GSW that the City never resolved. This evidence, without more, is insufficient to show that GSW breached its obligation “to present [Sorrels’] claim to the City.” GSW did not promise to do Sorrels’ work in documenting the impact claim, nor did GSW guarantee that the claim would succeed. We conclude that the district court erred in failing to grant GSW’s motion for judgment notwithstanding the verdict with respect to Sorrels’ pre-Addendum impact damages.
 

 2. Post-Addendum impact damages.
 

 After the Addendum was executed, Sorrels continued to suffer impact damages because of incomplete and inaccurate contract drawings and slow, unsequential approval of its shop drawings. At trial, Sorrels presented evidence that GSW orally agreed at the time the Addendum was executed to resolve these problems so that Sorrels could fabricate steel in a cost-effective manner. The evidence shows that GSW failed to do so.
 

 This version of the parties’ oral agreement is not inconsistent with the terms of the Addendum, which covered only Sorrels’ pre-Addendum impact claim. The statement in the Addendum that Sorrels’ then-existing impact claim was caused by “par
 
 *165
 
 ties other than GSW” does not foreclose the possibility that GSW undertook a separate obligation to remedy the underlying problems in the future. The district court could have considered that such an oral agreement was “wholly collateral and relate[d] to a subject distinct from that to which the [Addendum] applie[d]” — GSW’s responsibility for Sorrels’ past damages.
 
 Marianna Lime Products,
 
 147 So. at 266-67. Therefore, the admission of Sorrels’ evidence of this oral agreement did not violate the parol evidence rule, and the district court did not err in denying GSW’s motion for judgment notwithstanding the verdict with respect to Sorrels’ post-Addendum impact damages.
 

 B. Sorrels’ Testing Claim.
 

 The Addendum dealt separately with Sorrels’ testing claim. It states:
 

 GSW and Sorrels have presented a claim to the City of Tampa for additional money because of the Scope change in Specifications requiring UT Testing. The City has the knowledge that a Change Order will be issued to GSW for this Scope change when the value of the change has been determined and when the City issues a Change Order to GSW, GSW will in turn issue a Change Order to Sorrels. Sorrels agrees to provide documentation to support the value of the change.
 

 Approximately three months after the Addendum was executed, Sorrels sent GSW documentation detailing the number of welds involved in the testing program and Sorrels’ cost of compliance. GSW submitted the claim to the City, but no change order was issued. Sorrels subsequently submitted a second, professionally prepared testing claim to GSW, which GSW transmitted to the City. Sorrels never received the promised change order. Sorrels’ April 1986 action against GSW included this claim also, and the jury awarded Sorrels testing damages.
 

 GSW argues that the district court should have granted its motion for judgment notwithstanding the verdict on Sorrels’ testing claim because the Addendum provides that GSW is not required to issue Sorrels a change order until the City issues GSW a change order. GSW points out that the City has yet to issue a change order to GSW for the extra costs associated with the weld-testing program. We reject this argument.
 

 In the Addendum, GSW acknowledged that the City’s testing program went beyond Sorrels’ obligations under the Purchase Order. GSW assured Sorrels that “[t]he City has the knowledge that a change order
 
 will be issued
 
 to GSW ... when the value of the change has been determined [and that] GSW will in turn issue a change order to Sorrels.” (Emphasis added.) For its part, Sorrels promised to document the value of the change and to continue performing under the Purchase Order.
 

 GSW cannot escape liability for Sorrels’ testing damages by blaming the City. The Addendum language could reasonably be construed as an assurance by GSW to Sorrels that the City would issue a change order. Sorrels documented the value of the change and continued to perform under the Purchase Order in reliance on that assurance. GSW received the benefit of Sorrels’ continued performance under the Addendum and cannot now deny Sorrels its promised benefit. The district court did not err in refusing to overturn the jury’s award of testing damages.
 

 C. Sorrels’ Loss-of-Going-Concern Damages.
 

 The jury found that Sorrels went out of business and sold its assets at distress prices as a proximate result of GSW’s breach of contract. The jury awarded Sorrels $500,000 in loss-of-going-coneern damages. GSW argues that these damages constitute a double recovery because Sorrels’ “impact and testing” damages already included lost profits and earnings. GSW also claims there was insufficient evidence to support the jury’s conclusion that GSW caused Sorrels to go out of business. We reject these contentions.
 

 Sorrels’ “impact and testing” claims included damages that Sorrels suffered during its performance of the Purchase
 
 *166
 
 Order and did not include Sorrels’ value as a going concern. This injury is distinct and separate from Sorrels’ performance damages, and the jury’s award therefore did not constitute a double recovery.
 

 The record also contains sufficient evidence to support the jury’s finding that GSW’s breach of contract proximately caused Sorrels to go out of business. However, the continued validity of this finding is called into doubt by our conclusion that GSW is not liable for the impact damages Sorrels suffered prior to the execution of the Addendum. It is possible that absent those damages the jury would not have concluded that GSW’s breach proximately resulted in Sorrels’ failure as a going concern. This issue must therefore be retried on remand. On retrial, the factfinder should take into consideration only those damages for which GSW was properly held liable.
 

 D. The Releases.
 

 GSW made a series of contract payments to Sorrels after the Addendum was signed, and Sorrels executed a total of nine releases to GSW. Five of the releases were contained in “Request for Payment” forms supplied by GSW. These releases state:
 

 ... THAT the undersigned [Sorrels], for and in consideration of the payment of [amount], paid by or on behalf of [GSW] (“CONTRACTOR”), receipt and sufficiency of which is hereby acknowledged, hereby releases, remises and quit claims unto said CONTRACTOR ... and unto [the City], all their lien rights, claims and demands of every kind whatsoever, including any claims for extended or additional job costs and overhead and lost profits, due to any cause, including claims and demands arising from any claimed delays, disruptions or changes to the work, which the undersigned now has or might have against the property, contractor, and/or arising out of job identified and/or described as follows: Tampa Bay Performing Arts in Hillsbor-ough County, FL....
 

 The remaining four releases were not contained in “Request for Payment” forms. They provide:
 

 THAT THE UNDERSIGNED, [Sorrels]/ has heretofore supplied materials to the [Tampa Bay Performing Arts Center project] and that for and in consideration of the sum of [amount], heretofore paid by [Sorrels], receipt of which is hereby acknowledged ..., [Sorrels] hereby acknowledges that all materials heretofore furnished have been paid for in full, and [Sorrels] hereby remises, releases, acquits, satisfies and forever discharges [GSW] of an from any and all claims that it might have against GSW for furnishing materials for the aforementioned project.
 

 At trial, GSW took the position that Sorrels had released GSW from all liability for Sorrels’ “impact and testing” claims. GSW claimed to have paid Sorrels extra compensation for the releases as “advances” on Sorrels’ hopeful recovery against the City. Over GSW’s objection, the district court allowed Sorrels to introduce evidence that the parties never understood any one of the nine releases to discharge GSW from anything more than the amount of the payment GSW was then making to Sorrels. Sorrels also presented evidence that GSW’s “advances” on Sorrels’ impact and testing claims were made “on account,” meaning that Sorrels would receive no more than the original contract price unless the City issued change orders for Sorrels’ impact and testing claims. The jury found that the releases did not bar Sorrels’ recovery.
 

 GSW argues on appeal that the releases are unambiguous on their face and that the district court erred in admitting parol evidence to vary their plain meaning. GSW also contends that the district court’s instructions did not allow the jury to consider separately the effect of the two different types of releases. We disagree.
 

 The intent of the parties controls the effect of a release.
 
 See, e.g., Florida State Turnpike Auth. v. Industrial Const. Co.,
 
 133 So.2d 115, 116-17 (Fla.Dist.Ct.App.1961) (allowing
 
 recovery
 
 of extra compensation on construction contract despite a
 
 *167
 
 general release). When a release “is clear and unambiguous a court cannot entertain evidence contrary to its plain meaning.”
 
 Sheen v. Lyon,
 
 485 So.2d 422, 424 (Fla.1986). However, when a release is unclear or ambiguous, a court may consider parol evidence of the parties’ intent in order to properly construe the release.
 
 See id.
 

 In this case, five of the releases were contained in GSW’s “Request for Payment” forms. These releases are ambiguous in at least three respects: (1) the “Request for Payment” forms reflected only partial payments on the total contract amount, suggesting a partial, not complete, release of claims; (2) Sorrels was required to execute not one, but five releases, a procedure inconsistent with the absolute and all-encompassing language of each release; and (3) the releases purport to discharge the City from all claims, a result at odds with the express terms of the Addendum and the intent of both parties.
 

 The four releases that were not contained in “Request for Payment” forms are also ambiguous when considered together. If these releases were intended to discharge GSW from all liability for Sorrels’ impact and testing claims, as GSW asserts, there would have been no need for Sorrels to execute four of them. The circumstances surrounding their execution also indicate nothing more than a
 
 pro tanto
 
 release of Sorrels’ claims. We conclude that there was sufficient ambiguity to warrant the introduction of parol evidence of the parties’ intent with respect to the releases.
 

 We also reject GSW’s contention that the district court’s instructions did not allow the jury to consider separately the effect of the two types of releases. The district court mentioned the two groups of releases and stated:
 

 If ... you find from a preponderance of the evidence that
 
 any of the releases
 
 executed by Sorrels constituted and were intended by Sorrels to constitute an agreement by Sorrels to fully discharge [GSW] of any legal liability through the date of the execution of
 
 any of the releases described
 
 and that Sorrels accepted other valuable consideration, including but not limited to the monies paid in full satisfaction and discharge of all obligations of [GSW] accruing prior to its execution of any such release, then in that event [GSW] would have no legal liability to Sorrels for damages of any type that accrued to Sorrels prior to the last day when any such release was executed. (Emphasis added.)
 

 While the district court might have more clearly distinguished the two types of releases, these instructions were sufficient to require the jury to consider each of them separately.
 

 E. Prejudgment Interest.
 

 The district court awarded Sorrels prejudgment interest under Florida law at the statutory rate of 12 percent per annum. GSW argues that the district court erred in applying Florida law to the issue of prejudgment interest and that the court should have disallowed prejudgment interest under Mississippi law or at least should have reduced the interest rate to the Mississippi statutory rate of 8 percent. We disagree.
 

 A federal court sitting in diversity follows the choice of law rules of the state in which it sits.
 
 FMC Finance Corp. v. Murphree,
 
 632 F.2d 413, 418 (5th Cir.1980). While there is little Mississippi authority on the proper choice of law for prejudgment interest, the Mississippi Supreme Court has cited with approval the Restatement (Second) of Conflicts of Laws (1971) (the Restatement).
 
 See, e.g., Boardman v. United Services Automobile Association,
 
 470 So.2d 1024, 1032-34 (Miss.1985). Section 187(1) of the Restatement provides:
 

 The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue [i.e. prejudgment interest] is one which the parties could have resolved by an explicit provision in the agreement directed to that issue.
 

 Under Mississippi law, “parties may legitimately control the choice of substantive law in a contract dispute as long as the state law selected bears a reasonable relation to the transaction.”
 
 FMC Finance Corp.,
 
 632 F.2d at 418. This choice
 
 *168
 
 includes the issue of prejudgment interest.
 
 Cf. LaBarre v.
 
 Gold, 520 So.2d 1327, 1332-33 (Miss.1987). Therefore, under Mississippi choice of law principles, a choice of law provision in a contract will govern the issue of prejudgment interest, provided “the state law selected bears a reasonable relation” to the object of the contract.
 

 In this case, the Purchase Order states that the contract will be governed by Florida law. This choice bears a reasonable relationship to the object of the contract because the Tampa Performing Arts Center is located in Florida, Sorrels delivered the steel to Florida, and GSW is located in Florida. Thus, Florida law governs the contractual relationship of the parties, including the issue of prejudgment interest, and the district court properly awarded prejudgment interest at the Florida statutory rate of 12 percent per annum. However, the amount of, prejudgment interest will need to be recalculated after the correct amount of Sorrels’ damages is determined on remand.
 

 F. GSW’s Indispensable Party Claim.
 

 GSW argues that this lawsuit should have been dismissed because the City and its architect are indispensable parties under Fed.R.Civ.P. 19(b). GSW’s argument is based on the premise that the City and its architect are “persons to be joined if feasible” under Rule 19(a) because they are the ones actually responsible for Sorrels’ damages and because, in their absence, GSW might be subjected to inconsistent judgments. GSW raises the possibility that it will be held liable to Sorrels for damages caused by the City and its architect only to find that the Florida courts will not require the City and its architect to indemnify GSW. We reject these contentions.
 

 The City and its architect are not necessary parties to this litigation under Fed.R. Civ.P. 19(a)(1) because complete relief between Sorrels and GSW can be afforded without them. Sorrels can recover all of its damages from GSW except the pre-Ad-dendum impact damages. Sorrels agreed in the Addendum to look to “parties other than GSW” for those damages. GSW had the opportunity to raise all of its defenses against Sorrels’ claims and to try its own claim that Sorrels was guilty of breach of contract.
 

 Nor are the City and its architect necessary parties under Fed.R.Civ.P. 19(a)(2). Contrary to GSW’s suggestion, it will not be subjected to the possibility of inconsistent judgments. GSW is liable for Sorrels’ post-Addendum impact damages because it breached an oral agreement to provide Sor-réls a complete and accurate set of contract drawings and to expedite the orderly approval of Sorrels’ shop drawings. GSW is not merely a “conduit” to the City for these damages. GSW is liable for Sorrels’ testing damages because testing was specifically excluded by the Purchase Order and GSW failed to issue Sorrels a change order after assuring Sorrels that change orders were forthcoming from the City and from GSW. This conclusion is not inconsistent with a possible holding by the Florida courts that the testing program was within the scope of the prime contract. Since the City and its architect are not necessary parties under Fed.R.Civ.P. 19(a), they cannot be indispensable parties under Rule 19(b). The district court properly denied GSW’s motion to dismiss.
 

 IV. Summary and Conclusion.
 

 1. We affirm the district court’s denial of GSW’s motion for judgment notwithstanding the verdict with respect to Sorrels’ testing damages and post-Addendum impact damages. However, because the jury did not make specific findings on the amounts of these damages, we vacate that portion of the district court’s judgment and remand for further findings. .
 

 2.' We reverse the district court’s denial of GSW’s motion for judgment notwithstanding the verdict with respect to Sorrels’ pre-Addendum impact damages. Our decision is without prejudice to any demand Sorrels may now make that GSW pursue Sorrels’ pre-Addendum impact claim against the City, its architect, or other parties, according to the Addendum’s “Pass
 
 *169
 
 Thru Agreement” as construed in this opinion.
 

 3. We vacate that portion of the district court’s judgment upholding the jury’s award of $500,000 in loss-of-going-concern damages and remand for a finding of whether GSW’s breach of contract, as limited by this opinion, was the proximate cause of those damages.
 

 4. We affirm the district court’s conclusion that Sorrels is entitled to prejudgment interest under Florida law at the statutory rate of 12 percent per annum, but we vacate the specific award of prejudgment interest and remand for a recalculation of the amount due.
 

 5. The district court’s order and judgment are affirmed in all other respects.
 

 AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.